Case number 2 on this morning's docket, U.S. v. Dante Shorter, 21-2091, is being submitted on the briefs, and so for oral argument purposes, we will move on to case number 3, United States v. Melvin Watson, 21-1292. And maybe somebody needs to turn off their feed because we're getting some feedback. Okay, hopefully everything is off. So, all right, we will begin with you, Mr. Mitchell. Good morning, Your Honors. May it please the court, for the record, my name is Gregory Mitchell, and I represent a Defendant Appellant Melvin Watson. Judges, Your Honor, as argued in the brief, Mr. Watson contends the District Court essentially committed reverse lawyer when it denied his Rule 29 motion of acquittal, and finding that the evidence presented by the government in their case in chief, beyond a reasonable doubt, actually established that he were charged in this case, particularly the Sig Sawyer weapon, because that was the one that was fired. The Defendant recognizes that the standard to succeed on an insufficiency of the evidence argument is practically insurmountable, but what this court is tasked to do is take a very detailed look at the evidence that was presented on its own, and when you take a look at it and all the reasonable inferences that were raised by it, that reversible, in this case, the conviction should be reversed. Before I go into the facts that were outlined in my brief, I would like to first address two of the issues that were raised in the government's brief in response. The first was, in reliance on the case of Hampton, that I think they cite Judge at page 12 of their brief, they indicate that it's clear that circumstantial evidence alone is sufficient to prove possession of a firearm, and while that is generally true, it is clear that this court has required, at least in every single case where they've affirmed circumstantial evidence as being sufficient for possession, that there is some eyewitness testimony or some witness testimony that establishes that the defendant, at some point close to the alleged charge, actually possessed the weapon. But the thing is, Mr. Mitchell, circumstantial evidence alone is sufficient. I'm not aware of any, and there needs also to be an eyewitness. What the district judge does here is, you know, she pieces together a chain of events from people seeing, well, the fact that shots are fired, the pod camera capturing people running away, the white Cadillac, the amount of time, the people seeing Watson squirming around in the car trying to do something in any event, and by the time the car has stopped, there's the gun, you know, within easy arm reach. I'm not, and we don't have any evidence about the we know that the Sig Sawyer gun had just been fired. So it all can be linked together, at least a rational jury could link it all together, couldn't it? Well, if you look at the cases that are cited in the facts, what is missing in this case, Judge, and looking at every single one of them, is the question of, yes, you can have a conclusion or inference that Mr. Watson has some weapon, that in fact, that he was present where it was, or that he had a motive even to hide it. That's probably pointed out in the cases. Sure, but what about the fact that he's the one sitting in the back seat? Surely you would agree, would you not, that for actual possession, he doesn't have to have been the shooter over at the incident, as long as he had the gun in his hand, and he then puts the gun in the trunk, that's enough for actual possession, isn't it? Yes, it would be, Judge, if there was evidence that that's exactly what occurred, or at least that the inference can be drawn that that's what occurred. And what we have here are two links that are missing. And then you look at the two cases that the government relies upon in Hampton, as well as in Moulton, there's this proximity in terms of time that the witness who doesn't have actual possession of the weapon, but there are witnesses who either see him or observe the gun of a person that had the gun within proximity of the charge at that particular time. And so what you have is, is that even though you don't have evidence, direct evidence of his actual possession, there is enough circumstantial evidence of persons seeing an individual with the gun close to the proximity of where this, so that that link can be drawn. And what the cases also point out in this circuit is that, look, proximity alone, even though he's right there is not enough. What, what the concern here is, Judge, and I think the link that, that the government made and what the judge error made was two things. One is that the movements that the officers claimed he had was evidence that he in fact possessed the weapon. There was no evidence. Can we back up though? I mean, we know at some point that this gun was fired at, at the time that the firing scene at that particular intersection. And we also know that the gun makes its way into the trunk of the white Cadillac. So the gun moves, you know, it doesn't just stay there, you know, on the scene. You're not going to fire the gun while it's sitting on the floor of the back of the Cadillac. So there's, there's some movement of the gun that has to be with Mr. Watson sitting in the back seat of the car with easy access to the pass through into the trunk. The district courts regards that as circumstantial evidence that he's the one, at least briefly, maybe he's not the only one who touched it, but that doesn't need to be the case. Mr. Mitchell, well, I guess you should respond to Judge Wood. And then I need to ask you to clarify your argument that the government charged Mr. Watson with both guns. And I want to know, is it your position that the government was stuck with the facts as charged in the superseding information and thus had to prove possession of both guns to succeed? Or is your position that the government was free to argue at trial that Watson only possessed one gun, but the other of the guns? Well, let me, I'll address that, Your Honor, as soon as I address Judge Wood first, and then I'll answer a second. In regards to the passing of the gun and when the gun was shot, and this is the other critical link, Judge, that there was absolutely no evidence presented. There's a three and a half minute gap between the time that the shot is fired and when the police say they first saw the car speeding away. It's about a three and a half minute gap. The question becomes what, what evidence was presented at trial to indicate that there was, that there was no other person in the car at the time of the shooting, that, that, that another person who could have put the gun in the car. There, there is nothing to indicate that it was impossible during this three and a half minute period of time that other things could have occurred. Most importantly, Your Honor, is the, is the evidence that the photographs show. The, the photographs indicate that the guns were placed there, not shoved from the back or shoved in there in, in, uh, on top of one another or hastily. It appears that they were laid there. And if you take a look at the exhibit that was attached to the government's brief, which is one of the exhibits, Exhibit 10, actually shows that one of the shell cases, one of the shell casings were stuck between the open trunk area, which is number one, shell casing one was in the open trunk area where it was discovered. Now, if you're shooting a weapon and driving at the same time and you never opened the trunk, that shell casing cannot be lodged inside the trunk. The evidence indicates that somehow that shell casing got in there when the trunk was open before, in fact, the car was stopped. But, but again, the point is, is that if you start taking the inferences away from simply saying the shot was fired and the car was stopped, what you have here is a series of three minutes. You have a series of looking at where the weapons are actually laid in place in the vehicle. And then you actually have no up the area between the trunk and the car. I mean, there are no, not just no fingerprints on the gun. There are no handprints. There's no smudge prints. There's nothing to indicate that he at any point touched the inside of the opening that is that somehow he was working very hard to hide. And this is during the summertime. It's hot. So there's no evidence at all that even was to even use that opening. So, so again, granted their circumstantial evidence, my argument is that the link that that's drawn here skips over important aspects from the three minutes to the, to the, how the guns are laid and even somehow some of the physical evidence is found to indicate that it had to be Watson and only Watson. And to address the question raised by Ms. Jackson of Kiwi, what we have here is, is that I'm not arguing that the government has to prove or the judge has to find the two weapons. What I'm arguing here is that if you look at the evidence where the district court or fact finder, and this court has reviewed the circumstantial evidence, the stream to decide whether it's conjecture or speculation, they look at how the evidence presented at trial, what's the government's theory? How do they frame the evidence? Those as the, that's the language that this court has used to try to determine and distinguish between speculation and conjecture. And they asked the government, look, what is it that you, that your evidence shows? And if it turns out that the evidence does not support the government framing, and clearly that's exactly what happened in Moulton. The judge said, listen, it, all we have is your framing. We don't have any evidence that actually links what you were arguing to the issue here, which is the possession. And that's what I'm arguing. And the very fact that the district judge, it essentially found that the government's framing was inaccurate. That in fact, there wasn't him stashing two weapons. He did not touch two weapons. He did not do anything. In fact, he could not find, she could not find possession. She simply concluded that there was enough between the shooting and the six lawyer in the trunk was enough because there was obviously no other way. I mean, I think the term she used in her opinion, it was too brief. And there was no evidence that the period of time from the shooting and the time it was discovered was too brief at all. That was just simply a conjecture, a speculative argument that was made. And I think that's what the court pointed out again, when they reviewed and talked about the argument that was raised in insurance case. Your time has expired Mr. Mitchell. So I think I'm going to have to ask you to leave it at that. Thank you, Your Honor. Thank you very much. Ms. Morrissey. May it please the court. Good morning. My name is Megan Morrissey and I represent the government in this matter. The district court properly denied defendant's motion for judgment of acquittal because the evidence was clearly sufficient to support the court's guilty verdict. The evidence established in this case that the police tried to pull over a Cadillac mere minutes after the car was involved in a shooting. So Ms. Morrissey, could you at least tell me what the government's theory is about when this three minutes and 24 second period exists? Is it the shooting and then three minutes and 24 seconds elapse and then they go in search of him? Or is that the difference between when the shooting happens and when they're stopped? I'd be happy to correct that, Your Honor. The government measured a period of three minutes, 24 seconds as covering basically the entire timeline of relevant events in the case from the time the first call came into 9-1-1 about the shots being fired at 71st and Rose. And was that call simultaneous with the shots happening? I believe it appears to be near simultaneous and also nearly simultaneous to when the officers themselves heard the shots. So if we measure that as the starting point, three minutes, 24 seconds elapsed to the time the Cadillac was stopped. So it is not true that three minutes, 24 seconds elapsed before the police even started searching for the Cadillac. It's a much shorter window than that. The entire events of the case unfold over three minutes, 24 seconds. And does the record show how long it took? So some witnesses show them the direction in which the Cadillac left the scene. Do we know how quickly the first two officers found it? So the pod camera video shows citizens running from the area of 71st and Rose, which presumably marks when the shots were fired. The pod camera then shows about a minute, 30 seconds elapsed before officers Allen and Medina turn on to Rose. Unfortunately, we don't really have a good way of measuring the time they spent speaking briefly to the citizen tipster, then proceeding south on Rose, west on 72nd, and then northbound on Everhart. But the officers testified that they observed the So it's certainly at least a minute, 30 seconds. We acknowledge that, but maybe a total of two minutes may have elapsed until the time they caught up to the Cadillac. And so as they reached the Cadillac, they attempted to pull it over. The Cadillac refused to yield for at least a half mile. And during that period, the officers could see into the backseat. They observed defendant moving suspiciously. After the car was pulled over, the officers found two weapons in the trunk within very easy arms reach of where defendant was sitting in the backseat and had been making those suspicious movements. One of those guns was ballistically linked to the shooting at 71st and Rose, which provided very strong motive to hide it from law enforcement. And then as it was apparent to defendant that police were searching the trunk, the location where he had those guns, or at least the SIG Sauer weapon, he fled the scene. So all of this evidence considered together and in the light most favorable to the government provides ample support for the court's verdict. Although the district court did not credit the... Go ahead, please. The district court did not credit the fact that Mr. Watson fled. The district court indicated that, you know, the flight may be consistent with its verdict, but did indicate it wasn't affording it material weight in terms of reaching its verdict. But of course, this court, because it's part of the record, this court is free to consider that evidence. Ms. Morrissey, did the video cams on the two supporting police cars show anything that was pertinent to the case? Did the government rely on those video cams? And if so, how? The video cameras depicted the officer's search of the car and the officer's efforts to be discreet in discussing the fact that they had discovered weapons in the trunk. So again, as we argued at trial, that was part of why we found the flight to be... In addition, the dashboard camera videos contained consistent statements by officers Allen and Medina regarding the suspicious movements they observed defendant making in the backseat. The defense has argued that a fatal flaw in the government's case was the lack of witness possession of one of the weapons. But as Your Honor noted, that is not a requirement under this court's precedent. Witness testimony describing a defendant holding a gun would be direct evidence. And this court has been very clear in holding that the government may prove its case entirely by circumstantial evidence, which is what we did here. What about... Mr. Mitchell also indicated that the placement of the shell casing on the car was inconsistent with the government's theory. Mr. Mitchell's description of how the shell casing would have landed on the rim of the trunk, respectfully, is speculation. There's not evidence in the trial record one way or the other. That would explain how that shell casing landed in that particular place. It is possible that a gun would have been fired from the Cadillac as it was driving down roads and that the shell casing could have bounced onto the trunk and perhaps fell into that space when the police opened the trunk lid or somehow otherwise, through the force of physics, lodged itself into that space. You know, the government can't say with any particularity how that shell casing lodged itself into the trunk. But for this court's purpose in reviewing the record, it is absolutely clear that the Sig Sauer was the gun used in the shooting that occurred at 71st and Rhodes, and that it was transferred from the passenger compartment of the Cadillac to the trunk. So you're relying then on the fact that the shell casings found at the site of the shooting were determined by an expert to have come from the Sig Sauer? They were, as was the shell casing found on the rim of the trunk. All five of the recovered shell casings were matched to the Sig Sauer pistol. And again, as the government mentioned in our brief, the evidence at trial of the circumstantial evidence at trial establishing defendant's actual possession of the weapon as he hid it in the trunk makes this case much more like Hampton or McNeil or Moulton. And so unless there are any further questions from the court, the government respectfully requests that the court affirm defendant's conviction. Thank you. Thank you. You ran out of time, Mr. Mitchell, but we went a little short on this. I'll give you a minute if you would like to rebut. Yes, Judge. I would just point out that, again, the issue with the circumstantial evidence is not that you have to actually see the gun in someone's hand. Instead, you have to have evidence that indicates that he at one time possessed it. And in every case where there's a possession, that this circuit has found possession, there was evidence to indicate that the accused or the defendant actually possessed it at some as evidence direct that someone witness saw it, but whether or not he was known to carry the weapon, that it had been in his vehicle, that someone had had the weapons repaired. In every single case, Judge, that's been the distinction. But in addition to that and weighing the inferences, the court has always looked at the theory that the government has put out to frame to see if there's something consistent with their framing. In this particular case, district court said it was inconsistent by finding only the six or your and not both weapons. And so based on that, Your Honor, we would ask that the fiction should be overturned. All right. Thank you very much. And you took this case by appointment, I believe. Is that correct? Yes, Your Honor. We appreciate very much your efforts on behalf of your client and for the court. So with that,